**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | |
|---|---|
| MARINA PORTILLO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| H RESTAURANT AND NIGHT CLUB LLC | ) |
| d/b/a WHEATON LOUNGE | ) |
| 11300 Georgia Avenue | ) |
| Silver Spring, MD 20902 | ) |
| | ) |
| Registered Agent: | ) |
| Victoria Lopez | ) |
| 708 Fletcher Place | ) |
| Rockville, MD 20851 | ) |
| | ) |
| RAR GROUP INC. | ) |
| d/b/a EL TIPICO DOMINICANO | ) |
| 11300 Georgia Avenue | ) |
| Silver Spring, MD 20902 | ) |
| | ) |
| Registered Agent: | ) |
| Rafael Reyes | ) |
| 2627 Newton Street | ) |
| Silver Spring, MD 20906 | ) |
| | ) |
| JOSE LOPEZ | ) |
| 3706 Fairly Street | ) |
| Silver Spring, MD 20906 | ) |
| | ) |
| RAFAEL REYES | ) |
| 2627 Newton Street | ) |
| Silver Spring, MD 20902 | ) |
| | ) |
| Defendants. | ) |

Civil Action No._____

## COMPLAINT

Plaintiff, Marina Portillo ("Plaintiff" or "Ms. Portillo"), brings this action against H Restaurant and Night Club LLC d/b/a Wheaton Lounge, RAR Group Inc. d/b/a El Tipico Dominicano, Jose "Adrian" Lopez, and Rafael Reyes (collectively, "Defendants") to seek redress for willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.* ("MWHL"); the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* ("MWPCL"); the Montgomery County Minimum Wage Act, Montgomery, Md. Code § 27-67 *et seq.* ("MCMWA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601 *et seq.* ("MFEPA"); the Montgomery County Human Rights Law ("MCHRL"), Montgomery, Md. Code § 27-19 *et seq.* ("MCC"); the common law of intentional infliction of emotional distress; and the Restatement (Second) of Torts §§ 13, 18 (1965).

Defendants subjected Plaintiff to sexual harassment when her supervisors, Rafael Reyes and Adrian Lopez, repeatedly made explicit sexual comments and sexual advances towards her, which culminated in forcible sexual assault and rape in the workplace.  Defendants fostered a work environment where sexual harassment was prevalent, degrading language towards women was common, and assault of female employees, both by managers and customers, was actively encouraged.  Defendants made clear that any employee who complained about the sexual harassment or sexual assault would be promptly terminated and issued warnings and threats to silence the victims.  Ultimately, shortly after Plaintiff rebuffed Defendants' advances, begged them to stop sexually assaulting her, and told them their conduct was unlawful, Defendants

terminated Plaintiff's employment.  Defendants also failed to properly compensate Ms. Portillo throughout her employment as they never paid Ms. Portillo an hourly wage for her work.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) as this matter contains a federal question, and 28 U.S.C. § 1367(a) because the state and county law claims arise from the same nucleus of operative facts and form part of the same case or controversy.

2. This Court has personal jurisdiction over Defendant H Restaurant and Night Club LLC d/b/a Wheaton Lounge ("H Restaurant") because it has substantial, continuous, and systematic contacts with Maryland, and Defendant H Restaurant's relevant acts and omissions occurred in Maryland.  Defendant H Restaurant is registered to do business in Maryland.  At all times relevant to this Complaint, Defendant H Restaurant operated in Maryland.

3. This Court has personal jurisdiction over Defendant RAR Group Inc. d/b/a El Tipico Dominicano ("RAR Group") because it has substantial, continuous, and systematic contacts with Maryland, and Defendant RAR Group's relevant acts and omissions occurred in Maryland.  Defendant RAR Group is registered to do business in Maryland. At all times relevant to this Complaint, Defendant RAR Group operated in Maryland.

4. The Court has personal jurisdiction over Defendant Adrian Lopez because the acts or omissions of Defendant Lopez alleged herein occurred in Maryland.  Additionally, at all times relevant to this Complaint, Defendant Lopez was an owner and/or officer of H Restaurant, which operated in Maryland.  Defendant Lopez is a resident of Montgomery County, Maryland.

5.   The Court has personal jurisdiction over Defendant Rafael Reyes because the acts or omissions of Defendant Reyes alleged herein occurred in Maryland.  Additionally, at all times relevant to this Complaint, Defendant Reyes was an owner and/or officer of RAR Group, which operated in Maryland.  Defendant Reyes is a resident of Montgomery County, Maryland.

6.   Defendants employed Ms. Portillo to work as a server at Wheaton Lounge and El Tipico Dominicano, which are located in Montgomery County, Maryland.  All acts and omissions complained of occurred in or failed to occur in Montgomery County, Maryland.  All individual Defendants are residents of Montgomery County, Maryland.  Accordingly, venue lies within this judicial district pursuant to 28 U.S.C. § 1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.   On May 21, 2020, Ms. Portillo filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 531-2020-02245, and cross-filed her charge with the Maryland Commission on Civil Rights and the Montgomery County Office of Human Rights.

8.   On September 9, 2021, the EEOC issued Ms. Portillo a Notice of Right to Sue.

9.   Fewer than 90 days have passed since the issuance of the Notice of Right to Sue.

## PARTIES

10.   Ms. Portillo is an adult resident of Montgomery County, Maryland.

11.   Defendant Adrian Lopez is an adult resident of Montgomery County, Maryland.

12.   Defendant Rafael Reyes is an adult resident of Montgomery County, Maryland.

13. Defendant Wheaton Lounge was a restaurant and bar located at 11300 Georgia Avenue in Silver Spring, Maryland, which operated from approximately December 2018 to March 2020.

14. Wheaton Lounge is a registered trade name of H Restaurant and Night Club LLC, a limited liability company registered in Maryland.

15. Upon information and belief, Defendant Lopez is an owner and/or officer of H Restaurant.

16. When it was in operation, Wheaton Lounge shared premises with El Tipico Dominicano, a restaurant and nightclub located at 11300 Georgia Avenue in Silver Spring, MD, which operated from approximately December 2018 to March 2020.

17. El Tipico Dominicano is a registered trade name of RAR Group Inc., a close corporation registered in Maryland.

18. Rafael Reyes is the owner, director, and resident agent of RAR Group.

19. Ms. Portillo worked for Defendants as a server from February 2019 to her November 22, 2019 termination.

20. Ms. Portillo primarily served customers of Wheaton Lounge, and occasionally served customers of El Tipico Dominicano when Defendants Lopez or Reyes directed her to do so.

21. At all times relevant to this Complaint, Ms. Portillo was an employee of Defendants under Title VII, the MFEPA, the MCHRL, the FLSA, the MWHL, the MWPCL, and the MCWHA.

22. At all times relevant to this Complaint, Defendants were Ms. Portillo's employers under Title VII, the MFEPA, the MCHRL, the FLSA, the MWHL, the MWPCL, and the MCWHA.

23. At all times relevant to this Complaint, Defendants were engaged in commerce or in an industry or activity affecting commerce.

24. At all times relevant to this Complaint, Defendants employed over fifteen employees who worked in Maryland.

25. At all times relevant to this Complaint, Defendants used the services of another individual for pay in Maryland.

26. Upon information and belief, Defendants' gross annual sales made or business done has been $500,000 or greater at all relevant times.

**FACTS**

**Ms. Portillo's Employment with Defendants**

27. Ms. Portillo began her employment with Defendants in February 2019.

28. Defendant Lopez hired Ms. Portillo to work as a server.

29. Throughout Ms. Portillo's employment, Wheaton Lounge employed over fifteen servers, who, like Ms. Portillo, occasionally performed work for El Tipico Dominicano when directed to do so by management.

30. Defendants Lopez and Reyes managed the operations of both Wheaton Lounge and El Tipico Dominicano and supervised Ms. Portillo.

31. Throughout her employment, Ms. Portillo's performance was excellent. She performed all of her duties successfully.

32. Throughout Ms. Portillo's employment, Defendants did not provide employees with any written or verbal anti-harassment policy and had no procedure for reporting harassment or discrimination in the workplace.

33. Upon information and belief, Defendants did not display any notice of rights under federal, state, or local anti-discrimination or wage and hour laws at the worksite.

34. Defendants supervised Ms. Portillo and controlled the terms and conditions of Ms. Portillo's employment.

35. Defendants exercised the power to assign Ms. Portillo tasks and to direct the means of carrying out those tasks.

36. Defendants monitored and evaluated Ms. Portillo's job performance.

37. Defendants exercised the power to control Ms. Portillo's work schedule and status, including rate of pay.

38. Defendants had the authority to hire and fire Ms. Portillo.

## Defendants' Sexually Hostile Work Environment

39. Throughout Ms. Portillo's employment, Defendants Lopez and Reyes sexually harassed Ms. Portillo and other servers.

40. Defendants fostered an environment where sexual and degrading comments and behavior towards women were widely accepted.

41. Defendants routinely made offensive sexual comments about the servers, including about their physical appearance and the size of their breasts.

42. Defendants also regularly touched servers inappropriately.

43. In order to attract business, Defendants permitted, and even encouraged, customers to harass female servers by making sexually explicit or degrading comments to them and making sexual advances towards them.

44. Defendants explicitly told customers they could proposition servers for sexual favors.

45. On one occasion, a customer offered Ms. Portillo $500 in exchange for sex, and Defendant Lopez encouraged Ms. Portillo to comply with the request, saying words to the effect of "it's easy money" and "if I were you, I would do it."

46. On other occasions, Defendant Lopez instructed servers not to complain about inappropriate and unwanted touching by customers, saying words to the effect of "some love won't hurt you if [the customer] is spending money."

47. Defendants also encouraged customers to buy drinks for their servers, which increased the restaurant's sales.

48. Defendants required servers to sit with customers and incite customers to purchase drinks for both the customer and the server to drink together.

49. Defendants made clear to their servers, including Ms. Portillo, that they were not allowed to refuse a drink purchased by a customer.

50. As a result of this practice, many servers ended their shifts inebriated and customers and managers often took advantage of their intoxicated state to sexually assault female servers.

51. Defendants often required servers to stay at work after the restaurant closed, forced them to continue to drink alcohol until they were unable to consent or resist advances, often in a barely conscious state, and then Defendants proceeded to sexually assault the servers.

52. Upon information and belief, Defendants regularly put drugs in the servers' drinks in order to further intoxicate them to take advantage of them sexually.

**Defendants' Sexual Assault of Ms. Portillo's Co-Worker**

53. About two or three months after Ms. Portillo began working for Defendants, Ms. Portillo began training a new server, Cindy Gomez [pseudonym used to protect the safety of the witness].

54. One night, after Wheaton Lounge closed, Defendant Reyes asked Ms. Portillo and Ms. Gomez to stay at the bar for a drink.

55. Ms. Gomez was visibly intoxicated, and Defendant Reyes instructed her to drink more alcoholic beverages.

56. At some point, when Ms. Gomez was flitting in and out of consciousness, unable to stand upright, and unable to consent, Defendant Reyes took her into the kitchen to sexually assault her.

57. Concerned for Ms. Gomez's wellbeing, Ms. Portillo went to look for her and found Defendant Reyes having sexual intercourse with her on the kitchen floor.  Ms. Portillo noticed Ms. Gomez looked unconscious and unresponsive.

58. Ms. Portillo sought to stop the assault.  She notified Defendant Reyes of her presence and questioned Defendant Reyes' actions given that Ms. Gomez was so visibly intoxicated.

59. Defendant Reyes yelled at Ms. Portillo to get out of the kitchen.

60. Fearful for her own safety, Ms. Portillo left reluctantly and soon returned to check on Ms. Gomez.

61. Ms. Portillo once again found Defendant Reyes having sexual intercourse with Ms. Gomez, this time in the storage area of El Tipico Dominicano.

62. As it was clear that Ms. Gomez had not consented to having intercourse with Defendant Reyes, Ms. Portillo grabbed Ms. Gomez, ran outside the restaurant, and took her into a taxi with her to ensure she got home safely.

63. The next time Ms. Portillo saw Ms. Gomez, Ms. Gomez told Ms. Portillo that she did not remember what had happened that night.

64. Ms. Portillo told Ms. Gomez what she had witnessed. Ms. Gomez asked Ms. Portillo if Defendant Reyes had worn a condom, and Ms. Portillo told her she had not seen one.

65. Upon information and belief, Defendants sexually assaulted Ms. Gomez on at least one more occasion.

66. Ms. Gomez called the police in or around October 2019 to report that Defendant Lopez's nephews had tried to rape her at Wheaton Lounge.

67. A news article posted on Twitter reported Ms. Gomez's rape allegations on October 28, 2019.

68. Defendants Lopez and Reyes immediately fired Ms. Gomez after she reported the attempted rape.

69. Defendant Lopez sent a WhatsApp message to all of the Wheaton Lounge staff summoning them to a meeting with the express purpose of discussing the incident involving Ms. Gomez.

70. At the meeting, Defendants Lopez and Reyes explained that the purpose of the meeting was to notify the servers that they had fired Ms. Gomez because she had called the police to report the attempted rape. Defendants Lopez and Reyes threateningly referred

to Ms. Gomez's reporting of the sexual assault as a "mistake" by Ms. Gomez and referred to Ms. Gomez as "stupid" for calling the police.  Defendants Lopez and Reyes then explicitly stated they would not tolerate reports or complaints about their conduct and instructed servers not to call the police under any circumstances.

71. The intention of the meeting was clearly to send a warning to servers that they must remain silent about the harassment and assault that regularly occurred at Wheaton Lounge and El Tipico Dominicano, or risk losing their employment.

### Defendants' Sexual Assault of Ms. Portillo

72. Throughout Ms. Portillo's employment, Defendants Lopez and Reyes routinely subjected her to sexual harassment and assault.

73. Defendant Lopez often made inappropriate comments to Ms. Portillo that were sexual in nature.  For example, Defendant Lopez often commented on Ms. Portillo's breasts, such as telling her that they looked "good," "perfect," or "big."

74. On multiple occasions, Defendant Lopez told Ms. Portillo that he wanted to put his penis in between her breasts.

75.  On other occasions, Defendant Lopez asked Ms. Portillo about her underwear, including whether she was wearing a thong or asking about its color.

76. Defendant Lopez also sexually assaulted Ms. Portillo on multiple occasions.  He often grabbed Ms. Portillo's breasts and spanked her butt as she walked by him.

77. Several times, Defendant Lopez cornered Ms. Portillo, pushed her suddenly against the wall and simulated having intercourse with her.

78. Similarly, Defendant Lopez would stand behind Ms. Portillo and rub his penis against Ms. Portillo's butt when she was bending down behind the bar to grab a drink for a customer.

79. On multiple occasions, Defendant Lopez followed Ms. Portillo inside the walk-in freezer and tried to kiss and touch Ms. Portillo.  Defendant Lopez would close the door of the freezer and hold the handle to make it impossible for Ms. Portillo to leave.

80. When Defendant Lopez harassed and assaulted Ms. Portillo, she made it clear that his conduct was unwelcome.  She explicitly told him she was not interested in him romantically and tried to move away from him and push him away when he engaged in unwanted touching.  She was visibly uncomfortable during these interactions.

81. Defendant Reyes also harassed Ms. Portillo by making comments that were sexual in nature and similarly assaulting Ms. Portillo.

82. For example, Defendant Reyes regularly made comments about Ms. Portillo's breasts, including commenting on the size of her breasts.

83. Defendant Reyes rubbed his penis against Ms. Portillo when she was working behind the bar.

84. Defendant Reyes once pushed Ms. Portillo against the wall and tried to kiss her.  When that happened, Ms. Portillo slapped him and told him she would not allow him to do so.

85. On another occasion, Ms. Portillo was wearing a dress with a front zipper and Defendant Reyes pulled the zipper down to reveal Ms. Portillo's breast and acted like he wanted to kiss them.  Ms. Portillo immediately slapped him and told him to stop.

86. After Ms. Portillo made clear that Defendant Reyes' conduct was unwelcome and asked him to stop harassing her, Defendant Reyes began to act in a hostile manner toward Ms. Portillo.

87. Defendant Reyes would humiliate Ms. Portillo in front of her coworkers or ignore her completely when she came to him with a work-related question.  For example, Mr. Reyes often stated he was busy and did not have time to talk to Ms. Portillo when she informed him a customer was harassing her or refused to pay a bill, even though Mr. Reyes did not appear to be performing any work-related tasks when Ms. Portillo approached him for assistance.

88. In fact, on at least one occasion, Mr. Reyes explicitly told Ms. Portillo words to the effect of, "I want nothing to do with you."

89. Several months after Ms. Portillo began her employment, a friend of hers, Jane Garcia [pseudonym used to protect the safety of the witness], came over to the restaurant to see Ms. Portillo and had a drink at the bar.

90. As was typical, Defendant Lopez pressured Ms. Portillo and Ms. Garcia to remain at Wheaton Lounge after it closed and continue to drink until they were heavily inebriated.

91. Because Defendant Lopez was the restaurant's owner and controlled her employment, and because Defendant Lopez had made clear that there would be negative consequences for those who did not comply with his requests, Ms. Portillo felt she did not have a choice but to acquiesce to his request to drink with him.

92. Defendant Lopez continued to give Ms. Portillo alcoholic drinks and demanded that she consume them.

93. At some point that evening, Reuben Hurtado, an employee of Defendants, grabbed Ms. Garcia and took her into the back of El Tipico Dominicano while Defendant Lopez forcibly took Ms. Portillo into the Wheaton Lounge kitchen.

94. Ms. Portillo and Ms. Garcia were so inebriated they were unable to recall much of what transpired that night.

95. The next day, Defendant Lopez told Ms. Portillo that they had engaged in sexual intercourse and that he had liked it.

96. Horrified, Ms. Portillo told Defendant Lopez she was disgusted by his statement and that it was wrong for him to take advantage of her while she was unconscious.

97. When Ms. Portillo asked Mr. Hurtado what he had done to Ms. Garcia, he responded that Ms. Garcia's butt was so big that his penis got lost in it.

98. Ms. Garcia spent three days in bed at Ms. Portillo's house as she was physically and emotionally ill after the incident and could not move.

99. After Ms. Portillo informed Defendant Lopez that she did not want any physical relationship with him, Defendant Lopez's harassment towards Ms. Portillo escalated.

100. For example, Defendant Lopez stuck his hand under Ms. Portillo's skirt or dress and tried to kiss her nearly every time she walked by him.

101. Ms. Portillo repeatedly told Defendant Lopez that she found his actions disgusting, but he ignored her pleas to stop assaulting her.  In response, he often said that he wanted a romantic relationship with her.

102. Defendant Lopez consistently made excuses to require Ms. Portillo to stay at Wheaton Lounge late so that she would be alone with him.  For example, Defendant Lopez would

claim Ms. Portillo had not cleaned the bar well enough and order her to clean it again, even when the bar was already very clean.

103.  Although Ms. Portillo was afraid for her safety, she complied with Defendant Lopez's instructions because she feared losing her job and could not afford to do so.

104. Ms. Portillo usually asked one of her coworkers to wait for her at the end of the night so that Ms. Portillo would not have to be alone with Defendant Lopez.

105. One night in or around October 2019, while Ms. Portillo was working at Wheaton Lounge, she asked her coworker, Sarah Diaz [pseudonym used to protect the safety of the witness], to wait with her until she was done working so that she would not be alone with Defendant Lopez.

106. When Ms. Diaz went outside to call a taxi for herself and Ms. Portillo, Defendant Lopez locked Ms. Diaz outside while Ms. Portillo was still inside the restaurant with him.

107. As Ms. Portillo tried to leave the restaurant, Defendant Lopez pushed her against the wall and started kissing her very aggressively.

108. Ms. Portillo screamed to get Ms. Diaz's attention, yelling that Defendant Lopez had grabbed her and was not letting her go.

109. Ms. Diaz saw Defendant Lopez assaulting Ms. Portillo through the glass door, screamed back at them and banged on the door to try to get in and help Ms. Portillo.

110. Ms. Portillo pushed Defendant Lopez away and slapped him at least three times.

111. Ms. Portillo told Defendant Lopez that his actions were against the law, suggesting that she would pursue legal recourse against him.

112. In response to Ms. Portillo suggesting that she would report or complain about his actions, Defendant Lopez became extremely angry and menacingly warned Ms. Portillo

that he had really good lawyers, suggesting that any efforts by Ms. Portillo to pursue legal action would be futile, before letting Ms. Portillo out the door.

113. The next time Ms. Portillo went to work, Defendant Lopez asked her in a threatening tone if she remembered what she had told him that night and explicitly warned her to be careful with her words.

114. Ms. Portillo understood that Defendant Lopez was trying to intimidate her so that she would not complain about the harassment to which he had subjected her.

115. Ms. Portillo responded that Defendant Lopez should be careful with his actions because they constituted sexual harassment, and again begged him to stop assaulting her.

116. Around the beginning of November 2019, Defendant Lopez assaulted Ms. Portillo after her shift while she was intoxicated.

117. That night, as usual, Ms. Portillo had been forced to drink alcoholic beverages purchased by customers and had become so inebriated that she was throwing up in the bathroom.

118. Mr. Hurtado pushed her into Defendant Lopez's office despite the fact that she was barely conscious and visibly sick.

119. While Ms. Portillo was lying on a table, Defendant Lopez smelled her underwear, threw them on her face, and penetrating her.

120. The next day, Defendant Lopez told Ms. Portillo he liked how she performed sexually and that her underwear smelled differently from other women's underwear.

121. Ms. Portillo pleaded with Defendant Lopez to stop having sex with her when she was incapacitated and could not consent.  She again reiterated that she did not want to have any physical relationship with him.

**<u>Defendants' Retaliatory Termination of Ms. Portillo's Employment</u>**

122. One night, shortly after Ms. Portillo told Defendant Lopez his actions were against the law, Ms. Portillo was working for Defendants when a customer left her a large credit card tip of $100.

123. Defendant Lopez unjustifiably suggested that Ms. Portillo had written the tip on the customer's credit card receipt without the customer's authorization.

124. When Ms. Portillo assured him that the tip had been left by the customer, Defendant Lopez told her in a threatening tone to be careful because he was watching her carefully and suggested that he was looking for any excuse to terminate her employment. Specifically, Defendant Lopez stated to Ms. Portillo words to the effect that she was "under the microscope."

125. Prior to telling Defendant Lopez his actions were against the law, Ms. Portillo had never received any criticism or negative feedback about her work performance, nor had Defendants closely scrutinized her work.

126. Defendants terminated Ms. Portillo on November 22, 2019.

127. That day, Ms. Portillo was working for Defendants when one of her customers ordered a beer and Ms. Portillo grabbed the beer from the fridge in order to serve it to the customer.

128. Ms. Portillo did not place the order into the restaurant's computer system before serving the beer, as she intended to punch in the order after serving the beer.

129. This was common practice at Wheaton Lounge because the restaurant only had two computers for over fifteen waitresses, often causing extensive delays in accessing computers and, therefore, in serving customers.

130. Defendants were aware of the common practice of serving customers prior to placing their orders into the system.

131. Before grabbing the beer from the fridge, Ms. Portillo had obtained permission to do so from Defendant Lopez's brother, Rafael "Tio" Lopez, who was a manager for Wheaton Lounge.

132. When Defendant Lopez saw Ms. Portillo bend down behind the bar to get the beer for the customer, he grabbed Ms. Portillo aggressively, took her to the kitchen, and accused her of stealing.

133. When Ms. Portillo explained that she intended on placing the order in the computer system after serving the beer and that Tio Lopez had permitted her to do so, Defendant Lopez fired her.

134. Defendants never disciplined another server for serving an order prior to placing it in the computer system.

135. A week before Ms. Portillo was fired, another served also served a drink before punching the order into the system, and Defendants did not fire her.  Upon information and belief, that waitress acquiesced to senior management's sexual advances towards her.

136. Prior to Ms. Portillo opposing Defendant Lopez's assault by suggesting she would pursue legal claims against him, Defendant Lopez had witnessed Ms. Portillo and other servers frequently provide drinks to customers before inputting their orders into the system and he had never previously disciplined Ms. Portillo for such actions.

137. As a result of Defendants' actions, Ms. Portillo suffered significant emotional and financial harm.

## Defendants' Failure to Pay Ms. Portillo

138. Defendants never paid Ms. Portillo an hourly wage for the work she performed at Wheaton Lounge and El Tipico Dominicano.

139. Defendants never issued Ms. Portillo a paycheck.

140. Upon information and belief, Defendants did not record the hours worked by Ms. Portillo.

141. Defendants did not display any notice of rights under federal, state, or local wage and hour laws at the worksite.

142. Ms. Portillo was paid  in tips she received from customers while working at Wheaton Lounge and El Tipico Dominicano.

143. Additionally, if Ms. Portillo sold a minimum of $600 of food and beverages to customers on a weekday shift, Defendants promised to pay her $60 in cash; and if she sold a minimum of $1,000 on a weekend shift, Defendants promised to pay her $100 in cash.

144. The $600 weekday and $1,000 weekend minimum sales requirement applied to all servers.

145. Hours worked did not factor into the compensation Ms. Portillo, or other servers, received.

146. About half of the times Ms. Portillo met the minimum sales requirement, Defendants did not pay her the cash they had promised her.

147. Whenever one of Ms. Portillo's customers left the restaurant without paying his or her bill, Defendants required Ms. Portillo to pay the bill.

148. On one occasion, a customer who was friends with Tio Lopez left without paying his bill, and Ms. Portillo was forced to pay approximately $600 to cover his bill.

149. Defendants also required its servers, including Ms. Portillo, to pay $10 at the end of each shift.

150. From the beginning of her employment to around June of 2019, Ms. Portillo worked approximately 43 hours per week.

151. From around July of 2019 through her November 22, 2019 termination, Ms. Portillo worked approximately 26 hours per week.

152. Defendants were aware of the legal requirement to pay Ms. Portillo the statutory minimum wage for all hours worked.

153. Defendants were aware of the legal requirement to pay Ms. Portillo overtime wages at one-and-a-half times the regular rate of pay for all hours worked in excess of 40 each workweek.

154. Defendants were aware of the legal requirement to keep and maintain records for at least three years documenting the hours worked by each employee and the amount paid to each employee during those hours.

155. Defendants' failure to pay Ms. Portillo's wages was not the result of a bona fide dispute.

156. Defendants' conduct was willful and in bad faith.

## COUNT I: FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

157. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the FLSA.

158. At all times relevant to this Complaint, Defendants were "engaged in commerce" within the meaning of 29 U.S.C. § 203(s).

159. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of 29 U.S.C. § 203(d).

160. At all times relevant to this Complaint, Plaintiff was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e).

161. During the applicable statutory period, Defendants routinely failed to pay Plaintiff a minimum wage for all hours worked, in violation of 29 U.S.C. § 206.

162. Defendants may not claim a "tip credit" from Plaintiff's wages because they failed to comply with the requirements under 29 U.S.C. § 203(m) to claim such a credit.

163. Defendants did not post a notice explaining the FLSA in a conspicuous place so as to permit Plaintiff to readily observe a copy, as required by 29 C.F.R. § 516.4.

164. Defendants' violations of the FLSA were repeated, willful, and intentional. Accordingly, a three-year statute of limitations governs this claim pursuant to 29 U.S.C. § 255(a).

165. Plaintiff is entitled to recover all unpaid minimum wage compensation and reasonable attorneys' fees and costs incurred in the filing and prosecution of this action, pursuant to 29 U.S.C. § 216(b).

166. Defendants have not acted in good faith or with reasonable grounds to believe their actions and omissions were not in violation of the FLSA.  Therefore, Plaintiff is entitled to recover liquidated damages in an amount equal to the unpaid wages described above, pursuant to 29 U.S.C. § 216(b).

167. Alternatively, should the Court find that Defendants have not acted willfully in failing to pay minimum wages, Plaintiff is entitled to an award of prejudgment interest on all unpaid wages at the applicable legal rate.

## COUNT II:  FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF THE MARYLAND WAGE AND HOUR LAW

168. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the MWHL.

169. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of Md. Code Ann., Lab. & Empl. § 3-401(b).

170. During the applicable statutory period, Defendants routinely failed to pay Plaintiff a minimum wage for all hours worked, in violation of Md. Code Ann., Lab. & Empl. § 3-413(b).

171. Defendants may not claim a "tip credit" from Plaintiff's wages because they failed to comply with the requirements under Md. Code Ann., Lab. & Empl. § 3-419 to claim such a credit.

172. Defendants did not post a notice of Maryland wage and hour laws in a conspicuous and accessible place as required by Md. Code Ann., Lab. & Empl. § 3-423.

173. Plaintiff is entitled to recover all unpaid minimum compensation, plus reasonable attorneys' fees and costs incurred in the filing and prosecution of this action, pursuant to Md. Code Ann., Lab. & Empl. § 3-427.

174. Defendants have not acted in good faith or with reasonable grounds to believe their actions and omissions were not in violation of the MWHL.  Therefore, Plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid wages described above, pursuant to Md. Code Ann., Lab. & Empl. § 3-427.

175. Alternatively, should the Court find that Defendants have not acted willfully in failing to pay minimum wages, Plaintiff is entitled to an award of prejudgment interest on all unpaid wages at the applicable legal rate.

### COUNT III: FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF THE MONTGOMERY COUNTY MINIMUM WAGE LAW

176. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs under the MCMWL.

177. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of Montgomery, Md. Code § 27-67(b).

178. At all times relevant to this Complaint, Plaintiff was Defendants' "employee" within the meaning of Montgomery, Md. Code § 27-67(b).

179. Plaintiff was not exempt from being paid the Montgomery County minimum wage under Montgomery, Md. Code § 26-68(c).

180. Defendants did not pay Plaintiff the statutorily mandated minimum wage in Montgomery County, Maryland for her work as server for the Defendants in violation of Montgomery, Md. Code § 27-68(a).

181. Plaintiff was not a "tipped employee" and Defendants may not claim a "tip credit" from Plaintiff's wages because Defendants failed to meet the requirements of Montgomery, Md. Code § 27-69 to claim such a credit.

182. Plaintiff is entitled to recover any relief that furthers the purpose of the MCMWL, including lost wages, interest, damages for humiliation and embarrassment, and reasonable attorney's fees pursuant to Montgomery, Md. Code § 27-8(a), (c).

### COUNT IV: FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

183. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the FLSA.

184. At all times relevant to this Complaint, Defendants were "engaged in commerce" within

the meaning of 29 U.S.C. § 203(s).

185. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of 29 U.S.C. § 203(d).

186. At all times relevant to this Complaint, Plaintiff was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e).

187. During the applicable statutory period, Plaintiff routinely worked hours in excess of forty per workweek without receiving overtime compensation from Defendants for her overtime hours worked, in violation of 29 U.S.C. § 207(a).

188. Defendants may not claim a "tip credit" from Plaintiff's wages because they failed to comply with the requirements under 29 U.S.C. § 203(m) to claim such a credit.

189. Defendants did not post a notice explaining the FLSA in a conspicuous place so as to permit Plaintiff to readily observe a copy, as required by 29 C.F.R. § 516.4.

190. Defendants' violations of the FLSA were repeated, willful, and intentional. Accordingly, a three-year statute of limitations governs this claim pursuant to 29 U.S.C. § 255(a).

191. Plaintiff is entitled to recover all unpaid overtime wage compensation and reasonable attorneys' fees and costs incurred in the filing and prosecution of this action, pursuant to 29 U.S.C. § 216(b).

192. Defendants have not acted in good faith or with reasonable grounds to believe their actions and omissions were not in violation of the FLSA. Therefore, Plaintiff is entitled to recover liquidated damages in an amount equal to the unpaid wages described above, pursuant to 29 U.S.C. § 216(b).

193. Alternatively, should the Court find that Defendants have not acted willfully in failing to pay overtime wages, Plaintiff is entitled to an award of prejudgment interest on all

unpaid wages at the applicable legal rate.

## COUNT V:  FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE MARYLAND WAGE AND HOUR LAW

194. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the MWHL.

195. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of Md. Code Ann., Lab. & Empl. § 3-401(b).

196. During the applicable statutory period, Plaintiff routinely worked hours in excess of forty per workweek without receiving overtime compensation from Defendants for these hours, in violation of Md. Code Ann., Lab. & Empl. § 3-415(a).

197. Defendants may not claim a "tip credit" from Plaintiff's wages because they failed to comply with the requirements under Md. Code Ann., Lab. & Empl. § 3-419 to claim such a credit.

198. Defendants did not post a notice of Maryland wage and hour laws in a conspicuous and accessible place as required by Md. Code Ann., Lab. & Empl. § 3-423.

199. Plaintiff is entitled to recover all unpaid overtime compensation, plus reasonable attorneys' fees and costs incurred in the filing and prosecution of this action, pursuant to Md. Code Ann., Lab. & Empl. § 3-427.

200. Defendants have not acted in good faith or with reasonable grounds to believe their actions and omissions were not in violation of the MWHL.  Therefore, Plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid wages described above, pursuant to Md. Code Ann., Lab. & Empl. § 3-427.

201. Alternatively, should the Court find that Defendants have not acted willfully in failing to pay overtime wages, Plaintiff is entitled to an award of prejudgment interest on all

unpaid wages at the applicable legal rate.

## COUNT VI: FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE MONTGOMERY COUNTY MINIMUM WAGE LAW

202. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs under the MCMWL.

203. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of Montgomery, Md. Code § 27-67(b).

204. At all times relevant to this Complaint, Plaintiff was Defendants' "employee" within the meaning of Montgomery, Md. Code § 27-67(b).

205. Plaintiff was not exempt from being paid overtime wages under Montgomery, Md. Code § 26-68(c).

206. Defendants did not pay Plaintiff the statutorily mandated overtime wage in Montgomery County, Maryland for her work as server for the Defendants in violation of Montgomery, Md. Code § 27-68(a).

207. Plaintiff was not a "tipped employee" and Defendants may not claim a "tip credit" from Plaintiff's wages because Defendants failed to meet the requirements of Montgomery, Md. Code § 27-69 to claim such a credit.

208. Plaintiff is entitled to recover any relief that furthers the purpose of the MCMWL, including lost wages, interest, damages for humiliation and embarrassment, and reasonable attorney's fees pursuant to Montgomery, Md. Code § 27-8(a), (c).

## COUNT VII: TIP THEFT IN VIOLATION OF THE FAIR LABOR STANDARDS ACT

209. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the FLSA.

210. At all times relevant to this Complaint, Defendants were "engaged in commerce" within

the meaning of 29 U.S.C. § 203(s).

211. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of 29 U.S.C. § 203(d).

212. At all times relevant to this Complaint, Plaintiff was Defendants' "employee" within the meaning of 29 U.S.C. § 203(e).

213. Defendants may not claim a "tip credit" from Plaintiff's wages because they failed to comply with the requirements under 29 U.S.C. § 203(m) to claim such a credit.

214. During the applicable statutory period, Defendants took some of Plaintiff's tips by requiring Plaintiff to pay $10 at the end of each shift and requiring Plaintiff to pay her customers' bills if they failed to pay, in violation of 29 U.S.C. § 203(m)(2)(B).

215. Defendants did not post a notice explaining the FLSA in a conspicuous place so as to permit Plaintiff to readily observe a copy, as required by 29 C.F.R. § 516.4.

216. Defendants' violations of the FLSA were repeated, willful, and intentional. Accordingly, a three-year statute of limitations governs this claim pursuant to 29 U.S.C. § 255(a).

217. Plaintiff is entitled to recover the sum of all tips unlawfully taken by Defendants, plus costs and reasonable attorneys' fees incurred in the filing and prosecution of this action, pursuant to 29 U.S.C. § 216(b).

218. Defendants have not acted in good faith or with reasonable grounds to believe their actions and omissions were not in violation of the FLSA.  Therefore, Plaintiff is entitled to liquidated damages in an amount equal to the sum of all tips unlawfully taken by Defendants, pursuant to 29 U.S.C. § 216(b).

## COUNT VIII: TIP THEFT IN VIOLATION OF THE MARYLAND WAGE AND HOUR LAW

219. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the MWHL.

220. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of Md. Code Ann., Lab. & Empl. § 3-401(b).

221. Defendants may not claim a "tip credit" from Plaintiff's wages because they failed to comply with the requirements under Md. Code Ann., Lab. & Empl. § 3-419 to claim such a credit.

222. During the applicable statutory period, Defendants took some of Plaintiff's tips by requiring Plaintiff to pay $10 at the end of each shift and requiring Plaintiff to pay her customers' bills if they failed to pay, in violation of Md. Code Ann., Lab. & Empl. § 3-419.

223. Defendants did not post a notice explaining the FLSA in a conspicuous place so as to permit Plaintiff to readily observe a copy, as required by Md. Code Ann., Lab. & Empl. § 3-423.

224. Plaintiff is entitled to recover the sum of all tips unlawfully taken by Defendants, plus costs and reasonable attorneys' fees incurred in the filing and prosecution of this action, pursuant to Md. Code Ann., Lab. & Empl. § 3-427.

225. Defendants have not acted in good faith or with reasonable grounds to believe their actions and omissions were not in violation of the MWHL.  Therefore, Plaintiff is entitled to liquidated damages in an amount equal to the sum of all tips unlawfully taken by Defendants, pursuant to Md. Code Ann., Lab. & Empl. § 3-427.

## COUNT IX: TIP THEFT IN VIOLATION OF THE MONTGOMERY COUNTY MINIMUM WAGE LAW

226. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs under the MCMWL.

227. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of Montgomery, Md. Code § 27-67(b).

228. At all times relevant to this Complaint, Plaintiff was Defendants' "employee" within the meaning of Montgomery, Md. Code § 27-67(b).

229. Plaintiff was not a "tipped employee" and Defendants may not claim a "tip credit" from Plaintiff's wages because Defendants failed to meet the requirements of Montgomery, Md. Code § 27-69 to claim such a credit.

230. During the applicable statutory period, Defendants took some of Plaintiff's tips by requiring Plaintiff to pay $10 at the end of each shift and requiring Plaintiff to pay her customers' bills if they failed to pay, in violation of Montgomery, Md. Code § 27-69.

231. Plaintiff is entitled to recover any relief that furthers the purpose of the MCMWL, including lost wages, interest, damages for humiliation and embarrassment, and reasonable attorney's fees pursuant to Montgomery, Md. Code § 27-8(a), (c).

## COUNT X: FAILURE TO PAY REGULAR WAGES IN VIOLATION OF THE MARYLAND WAGE PAYMENT AND COLLECTION LAW

232. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the MWPCL.

233. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of Md. Code Ann., Lab. & Empl. § 3-501(b).

234. During the applicable statutory period, Defendants routinely failed to pay Plaintiff

in full at least twice in each month, in violation of <u>Md. Code Ann.</u>, Lab. & Empl. § 3-507.2(a).

235. Defendants did not withhold Plaintiff's wages as a result of a bona fide dispute. Therefore, Plaintiff is entitled to recover from Defendants three times the wages owed to her, in addition to reasonable attorneys' fees and costs, pursuant to <u>Md. Code Ann.</u>, Lab. & Empl. § 3-507.2(b).

## COUNT XI: SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

236. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under Title VII.

237. At all times relevant to this Complaint, Plaintiff was Defendants' "employee" pursuant to 42 U.S.C. § 2000e(f).

238. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" pursuant to 42 U.S.C. § 2000e(b).

239. Plaintiff is a member of a protected class within the meaning of Title VII by virtue of her sex (female).

240. Defendants were aware that Plaintiff was a member of a protected class by virtue of her sex (female).

241. Defendants subjected Plaintiff to a hostile work environment based on her sex in the form of inappropriate comments, sexual invitations, and unwanted sexual conduct and assault.

242. The conduct alleged in the preceding paragraphs was unwelcome and Plaintiff asked Defendants, both verbally and non-verbally, to stop the behavior on numerous occasions.

243. Defendants were aware of the harassment and that the behavior was unwelcome.

244. Defendants did not establish or disseminate to employees any complaint process for reporting harassment or any anti-harassment policy.

245. The discriminatory actions taken toward Plaintiff were sufficiently severe and pervasive as to create an intimidating, hostile, and offensive work environment.

246. The harassment culminated in Plaintiff's termination.

247. Defendants failed to take reasonably adequate steps to prevent discrimination against Plaintiff in the workplace, and in fact expressly threatened to terminate employees who reported harassment and discrimination.

248. As a consequence of Defendants' discriminatory actions, Plaintiff suffered lost wages, compensatory damages, and emotional harm, including mental anguish, anxiety, stress, humiliation, and loss of enjoyment of life.

249. Defendant's actions were wanton, reckless, or in willful disregard of the Plaintiff's legal rights, and were motivated by evil intent or actual malice.  Therefore, punitive damages are appropriate.

### COUNT XII: SEXUAL HARASSMENT IN VIOLATION THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT

250. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under MFEPA.

251. At all times relevant to this Complaint, Plaintiff was Defendants' "employee" pursuant to Md. Code Ann., State Gov't § 20-601(c).

252. At all times relevant to this Complaint, Defendants were Plaintiff's "employer" pursuant to Md. Code Ann., State Gov't § 20-601(d).

253. Plaintiff is a member of a protected class by virtue of her sex (female).

254. Defendants were aware that Plaintiff was a member of a protected class by virtue of her sex (female).

255. Defendants subjected Plaintiff to a hostile work environment based on her sex in the form of inappropriate comments, sexual invitations, and unwanted sexual conduct and assault.

256. The conduct alleged in the preceding paragraphs was unwelcome and Plaintiff asked Defendants, both verbally and non-verbally, to stop the behavior on numerous occasions.

257. Defendants were aware of the harassment and that the behavior was unwelcome.

258. Defendants did not establish or disseminate to employees any complaint process for reporting harassment or any anti-harassment policy.

259. The discriminatory actions taken toward Plaintiff were sufficiently severe and pervasive as to create an intimidating, hostile, and offensive work environment.

260. The harassment culminated in Plaintiff's termination.

261. Defendants failed to take reasonably adequate steps to prevent discrimination against Plaintiff in the workplace, and in fact expressly threatened to terminate employees who reported harassment and discrimination.

262. As a consequence of Defendants' discriminatory actions, Plaintiff suffered lost wages, compensatory damages, and emotional harm, including mental anguish, anxiety, stress, humiliation, and loss of enjoyment of life.

263. Defendants' actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights, and were motivated by evil intent.  Therefore, punitive damages are appropriate.

## COUNT XIII: SEXUAL HARASSMENT IN VIOLATION OF SECTION 27-19 OF THE MONTGOMERY COUNTY HUMAN RIGHTS LAW

264. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claim of sexual harassment under the MCHRL.

265. At all times relevant to this Complaint, Plaintiff was an employee of Defendants under the MCHRL.

266. At all times relevant to this Complaint, Defendants were Plaintiff's employers under the MCHRL.

267. Plaintiff is a member of a protected class within the meaning of the MCHRL by virtue of her sex (female).

268. Defendants were aware that Plaintiff was a member of a protected class by virtue of her sex (female).

269. Defendants subjected Plaintiff to a hostile work environment based on her sex in the form of inappropriate comments, sexual invitations, and unwanted sexual conduct and assault.

270. The conduct alleged in the preceding paragraphs was unwelcome and Plaintiff asked Defendants, both verbally and non-verbally, to stop the behavior on numerous occasions.

271. Defendants were aware of the harassment and that the behavior was unwelcome.

272. Defendants did not establish or disseminate to employees any complaint process for reporting harassment or any anti-harassment policy.

273. The discriminatory actions taken toward Plaintiff were more than a petty slight, trivial inconvenience or minor annoyance.

274. The harassment culminated in Plaintiff's termination.

275. Defendants failed to take reasonably adequate steps to prevent discrimination against Plaintiff in the workplace, and in fact expressly threatened to terminate employees who reported harassment and discrimination.

276. As a result of Defendants' actions, Plaintiff suffered lost wages, compensatory damages, and emotional harm, including mental anguish, anxiety, stress, humiliation, and loss of enjoyment of life.

277. Defendants' actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights, and were motivated by evil intent.  Therefore, punitive damages are appropriate.

## COUNT XIV: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT

278. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under Title VII.

279. At all times relevant to this Complaint, Plaintiff was Defendants' "employee" pursuant to 42 U.S.C. § 2000e(f).

280. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" pursuant to 42 U.S.C. § 2000e(b).

281. Plaintiff engaged in protected activity when she opposed Defendants' actions, including when she objected to Defendant Reyes' assault of Ms. Gomez, when she told Defendant Lopez that his actions constituted sexual harassment and were against the law, and when she resisted Defendants' sexual advances.

282. Defendants retaliated against Plaintiff when they subjected her to threats, humiliation, further sexual harassment and assault, and eventually terminated her employment.

283. Defendants expressly threatened to terminate employees who reported harassment and discrimination.

284. As a result of Defendants' actions, Plaintiff suffered lost wages, compensatory damages, and emotional harm, including mental anguish, anxiety, stress, humiliation, and loss of enjoyment of life.

285. Defendants' actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights and were motivated by evil intent.  Therefore, punitive damages are appropriate.

### COUNT XV: RETALIATION IN VIOLATION OF THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT

286. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claims under the MFEPA.

287. At all times relevant to this Complaint, Plaintiff was Defendants' "employee" pursuant to Md. Code Ann., State Gov't § 20-601(c).

288. At all times relevant to this matter, Defendants were Plaintiff's "employer" pursuant to Md. Code Ann., State Gov't § 20-601(d).

289. Plaintiff engaged in protected activity when she opposed Defendants' actions, including when she objected to Defendant Reyes' assault of Ms. Gomez, when she told Defendant Lopez that his actions constituted sexual harassment and were against the law, and when she resisted Defendants' sexual advances.

290. Defendants retaliated against Plaintiff when they subjected her to threats, humiliation, further sexual harassment and assault, and eventually terminated her employment.

291. Defendants expressly threatened to terminate employees who reported harassment and discrimination.

292. As a result of Defendants' actions, Plaintiff suffered lost wages, compensatory damages, and emotional harm, including mental anguish, anxiety, stress, humiliation, and loss of enjoyment of life.

293. Defendants' actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights and were motivated by evil intent.  Therefore, punitive damages are appropriate.

## COUNT XVI: RETALIATION IN VIOLATION OF SECTION 27-19 OF THE MONTGOMERY COUNTY HUMAN RIGHTS LAW

294. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claim of retaliation.

295. At all times relevant to this Complaint, Plaintiff was an employee of Defendants under the MCHRL.

296. At all times relevant to this Complaint, Defendants were Plaintiff's employers under the MCHRL.

297. Plaintiff engaged in protected activity when opposed Defendants' actions, including when she objected to Defendant Reyes' assault of Ms. Gomez, when she told Defendant Lopez that his actions constituted sexual harassment and were against the law, and when she resisted Defendants' sexual advances.

298. Defendants retaliated against Plaintiff when they subjected her to threats, humiliation, further sexual harassment and assault, and eventually terminated her employment.

299. Defendants expressly threatened to terminate employees who reported harassment and discrimination.

300. As a result of Defendants' actions, Plaintiff suffered lost wages, compensatory damages, and emotional harm, including mental anguish, anxiety, stress, humiliation, and loss of enjoyment of life.

301. Defendants' actions were wanton, reckless, or in willful disregard of Plaintiff's legal rights and were motivated by evil intent.  Therefore, punitive damages are appropriate.

## COUNT XVII:  BATTERY BY DEFENDANT LOPEZ

302. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claim for battery.

303. Defendant Lopez's behavior constitutes battery pursuant to Restatement (Second) of Torts §§ 13, 18 (1965).

304. Defendant Lopez engaged in intentional, harmful, and offensive contact with Plaintiff on multiple occasions between February 2019 and November 2019, including but not limited to grabbing Plaintiff's breasts, spanking her butt, pushing her against the wall to simulate having intercourse with her, rubbing his penis against Plaintiff's butt, and on at least two occasions raping her.

305. When Defendant Lopez harassed and assaulted Plaintiff, she made it clear that she did not consent to the contact.

306. Defendant Lopez's actions toward Plaintiff occurred within the limitations period under the Md. Code Ann., Cts. & Jud. Proc. § 5-101.

307. Defendant Lopez's actions were intentional and wrongful.

308. Defendants authorized, ratified, and approved Defendant Lopez's actions.

309. Plaintiff is entitled to damages for compensatory damages for Defendant Lopez's actions, including pain and suffering, and punitive damages.

## COUNT XVIII:  BATTERY BY DEFENDANT REYES

310. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claim for battery.

311. Defendant Reyes' behavior constitutes battery pursuant to Restatement (Second) of Torts §§ 13, 18 (1965).

312. Defendant Reyes engaged in intentional, harmful, and offensive contact with Plaintiff on multiple occasions between February 2019 and November 2019, including but not limited to rubbing his penis against Plaintiff, pushing Plaintiff against the wall to try to kiss her, and pulling the zipper down Plaintiff's dress to reveal her breasts.

313. When Defendant Reyes harassed and assaulted Plaintiff, she made clear that she did not consent to the contact.

314. Defendant Reyes' actions toward Plaintiff occurred within the limitations period under the Md. Code Ann., Cts. & Jud. Proc. § 5-101.

315. Defendant Reyes' actions were intentional and wrongful.

316. Defendants authorized, ratified, and approved Defendant Reyes' actions.

317. Plaintiff is entitled to damages for compensatory damages for Defendant Reyes' actions, including pain and suffering, and punitive damages.

## COUNT XIX:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

318. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs in support of her claim for intentional infliction of emotional distress.

319. Defendant Lopez repeatedly harassed and assaulted Plaintiff between February 2019 and November 2019, including but not limited to grabbing Plaintiff's breasts, spanking her butt, pushing her against the wall to simulate having intercourse with her, rubbing his penis against Plaintiff's butt, and raping her.

320. Defendant Lopez's conduct was intentional, extreme, outrageous, and a complete violation of human dignity.  The conduct was intended to cause severe emotional distress and the distress inflicted was such that no reasonable person could be expected to endure it.

321. Defendant Reyes repeatedly harassed and assaulted Plaintiff between February 2019 and November 2019, including but not limited to rubbing his penis against Plaintiff, pushing Plaintiff against the wall to try to kiss her, and pulling the zipper down Plaintiff's dress to reveal her breasts.

322. Defendant Reyes' conduct was intentional, extreme, outrageous, and a complete violation of human dignity.  The conduct was intended to cause severe emotional distress and the distress inflicted was such that no reasonable person could be expected to endure it.

323. Defendants H Restaurant and RAR Group aided and abetted Defendants Reyes and Lopez in their unlawful conduct.

324. Defendants' actions toward Plaintiff occurred within the limitations period under Md. Code Ann., Cts. & Jud. Proc. § 5-101.

325. Plaintiff is entitled to damages for compensatory damages for the actions of Defendants Lopez and Reyes, including pain and suffering, and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Portillo respectfully requests the following relief:

(a) Grant judgment for Plaintiff against Defendants on all counts;

(b) Order Defendants, jointly and severally, to pay Plaintiff the unpaid minimum wages owed to her, plus liquidated damages;

(c) Order Defendants, jointly and severally, to pay Plaintiff the unpaid overtime wages owed to her, plus liquidated damages;

(d) Order Defendants, jointly and severally, to Plaintiff the sum of all tips unlawfully taken from her, plus liquidated damages;

(e) Order Defendants, jointly and severally, to pay Plaintiff back pay, prejudgment interest, front pay, and any other appropriate relief to make Plaintiff whole and compensate her for the civil rights violations described above, these amounts to be determined at trial;

(f) Order Defendants, jointly and severally, to pay Plaintiff compensatory damages in amounts to be determined at trial;

(g) Order Defendants, jointly and severally, to pay Plaintiff punitive damages in amounts to be determined at trial;

(h) Order Defendants, jointly and severally, to pay Plaintiff's reasonable attorney's fees and costs; and

(i) Order any other relief that the Court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues.


Respectfully Submitted,



Cori M. Cohen, Bar No. 19124
ccohen@gelawyer.com



Marlene A. Laimeche, Bar No. 18974
mlaimeche@gelawyer.com

Gilbert Employment Law, P.C.
1100 Wayne Avenue, Suite 900
Silver Spring, MD 20910
Tel: (301) 608-0880
Fax: (301) 608-0881

Counsel for Plaintiff Marina Portillo